```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

                                  :
SHIELD OUR CONSTITUTIONAL
 RIGHTS AND JUSTICE, et al.       :

     v.                           :    Civil Action No. DKC 2009-0151

                                  :
RICHARD F. WILCHER
                                  :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action are: (1) a motion to compel "an answer from defendant's attorneys" filed by Plaintiffs Shield Our Constitutional Rights and Justice ("Shield") and Qihui Huang (Paper 18); (2) a "motion for an extension to reply defendant's response (docket no. 19)" filed by Plaintiffs (Paper 21); (3) a motion to withdraw amended complaint filed by Plaintiffs (Paper 16); and (4) a motion to dismiss amended complaint filed by Defendant Robert Wilcher. (Paper 10). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Plaintiffs' motions will be denied and Defendant's motion will be granted.

I.  **Background**

This action arises from Plaintiff Qihui Huang's purchase of a residential property from homebuilder Centex Homes. Plaintiffs in this action are Ms. Huang, the home purchaser, and Shield, "a non-profit organization, formed and registered in Washington, District of Columbia, with hundreds of members national [sic] wide.

The purpose of the organization is to help and support victims of others' unlawful actions." (Paper 9 ¶ 7). Defendant Richard Wilcher is an inspector employed by Planchek, Inc., the independent inspection company hired by the Town of Indian Head (the "Town") to inspect Ms. Huang's property.

In or about 2004, Ms. Huang contracted to buy a house at 150 Riverwatch Drive in Indian Head, Maryland. As the purchaser, Ms. Huang put down a deposit and contracted to close on the property after a Use and Occupancy ("U&O") certificate was issued from the Town. Centex was required to obtain a U&O certificate prior to transferring the property to Ms. Huang. On November 8, 2004, when construction on the property had been substantially completed, Planchek certified the property as ready for a U&O certificate. The Town granted a U&O certificate to Centex on November 9, 2004. Centex notified Ms. Huang that a U&O certificate had issued and that she was contractually obligated to go to settlement or forfeit her deposit. Ms. Huang attended settlement and closed on the property on November 24, 2004.

In December 2004, Planchek informed the Town that Centex construction equipment had caused some damage to the side yard of Ms. Huang's property. Centex offered to fix the damage to the yard. However, when Centex attempted to sod Ms. Huang's yard, she refused to allow them onto the property to repair the damage to the landscaping. Instead, Ms. Huang sought help from the Town,

claiming that Centex forced her to settle on the property, even though the property had incomplete grading and landscaping, and had cliffs and ditches on the side yard.  The Town inquired of Planchek as to whether the U&O certificate had been approved in error. Defendant Wilcher informed the Town that, at the time he conducted the inspection, the condition of the property was sufficient to permit the authorization of a U&O certificate.  The Town manager informed Ms. Huang that the certificate was properly issued.

    The Town informed Ms. Huang by letter dated December 15, 2004 that if she did not allow Centex to enter the property to complete the work, she would assume responsibility for fixing the damage. The Town sent Ms. Huang a second letter on February 1, 2005 reiterating that if she did not allow Centex on the property to make repairs, she would assume responsibility for repairing the damage.

    Instead of allowing Centex to fix the damage or having it fixed herself, Ms. Huang filed a flurry of lawsuits in both state and federal court against Centex and its individual employees, the Town and its mayor, her lender and its appraiser, and Planchek and its individual employees, including Defendant Wilcher.  The case against Planchek and Defendant Wilcher, which was filed in the Circuit Court for Charles County, Maryland, was tried before a jury on April 16 and 17, 2008.  The jury returned a verdict in favor of

the defendants.  Ms. Huang filed an appeal of the judgment to the Court of Special Appeals of Maryland.

Plaintiffs allege that Defendant conspired with other witnesses during the Charles County trial to violate Ms. Huang's constitutionally protected civil rights, causing her to lose the trial.  Ms. Huang alleges that the loss at trial caused her physical injury, humiliation, and anxiety, and prevented her from working.  On January 23, 2009, Plaintiffs filed a fifteen count complaint in this court alleging that Mr. Wilcher: (1) "lied and defrauded"; (2) "misrepresented"; (3) "neglected"; (4) committed conspiracy in violation of 42 U.S.C. § 1985; (5) violated the Fourteenth Amendment to the United States Constitution; (6) violated 42 U.S.C. § 1981; (7) violated 42 U.S.C. § 1982; (8) violated 42 U.S.C. § 1983; (9) violated 42 U.S.C. § 1986; (10) violated 42 U.S.C. § 1988; (11) violated 42 U.S.C. § 3601; (12) violated 42 U.S.C. § 3604; (13) violated 42 U.S.C. § 3605; (14) violated 42 U.S.C. § 3617; and (15) violated 42 U.S.C. § 3631. (Paper 1).  Plaintiffs assert federal question and diversity jurisdiction.

Defendant filed a motion to dismiss the complaint on February 6, 2009.  (Paper 3).  Plaintiffs filed a motion for leave to file an amended complaint on February 17, 2009.  (Paper 6).  On February 18, 2009, the court entered an Order deeming the motion for leave to file an amended complaint unnecessary, denying as moot

4

Defendant's motion to dismiss (Paper 8), and accepting the amended complaint as the operative complaint.  (Paper 9).  Defendant subsequently filed a motion to dismiss the amended complaint on March 2, 2009.  (Paper 10).

Plaintiffs' response to the motion to dismiss amended complaint was due on March 19, 2009.  Plaintiffs did not respond, but rather on March 20, 2009 filed a motion for extension of time to file response/reply, suggesting that because Plaintiffs' counsel is an "aged solo practicer [sic], without assistant [sic], and sometimes not in good health," he was unaware that Defendant filed a motion to dismiss the amended complaint. (Paper 13).  The court granted Plaintiffs' motion for extension of time on March 26, 2009 and gave Plaintiffs until April 6, 2009 to file a response. (Paper 15).  On April 3, 2009, Plaintiffs then filed a motion to withdraw the amended complaint, requesting that the amended complaint be withdrawn and the original complaint be reinstated.  (Paper 16).  The same day, Plaintiffs filed a motion to compel an answer from Defendant's attorneys on April 3, 2009  (Paper 18).[1]  On April 30, 2009, Plaintiffs filed a motion for extension of time to file a

---

[1] Plaintiffs' rambling, nonsensical "motion for a court order to compel an answer from Defendant's attorneys" (Paper 18), poses a series of questions to Mr. Wilcher's attorneys.  Plaintiff asserts that Mr. Wilcher's attorneys engaged in fraud and discrimination during the Charles County trial and requests that the court "hate and punish" Defendant's attorneys.  The court is at a loss regarding the meaning or basis for this motion, therefore it will be denied.

5

reply to Defendant's opposition to Plaintiffs' motion to withdraw the amended complaint.  (Paper 21).[2]

## II. Motion to Withdraw Amended Complaint

Plaintiffs' motion to withdraw the amended complaint is a clumsy attempt to take advantage of the court's ruling denying as moot Defendant's motion to dismiss the original complaint. (Paper 3).  Plaintiffs seek to make the original complaint the operative complaint and then argue that the case must move forward because Defendant's motion to dismiss has already been denied as moot. Plaintiffs present no valid reason for allowing withdrawal of the amended complaint.  Accordingly, the motion to withdraw the amended complaint will be denied.

## III. Motion to Dismiss

### A. Subject Matter Jurisdiction

### 1. Standard of Review

Motions to dismiss for lack of subject matter jurisdiction are governed by Fed.R.Civ.P. 12(b)(1).  The plaintiff bears the burden

---

[2] Plaintiffs assert that additional time is necessary because attorney Sol Rosen did not receive email notices from the court and was unaware that Defendant filed Paper 19, an opposition to Plaintiffs' motion to dismiss the amended complaint.  In the motion for extension of time, Plaintiffs request that the court change the email address to which electronic notifications are sent.  In response to Plaintiffs' motion, the court informed Plaintiffs of the proper procedure for entering additional email addresses. (Paper 23). Plaintiffs neither changed the email address nor filed a reply to Defendant's motion.  Accordingly, the motion for extension of time will be denied.

of proving that subject matter jurisdiction properly exists in the federal court.  *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).  In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it.  *Richmond, Fredericksburg & Potomac R.R. Co. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647.  The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Richmond*, 945 F.2d at 768.

   **2.   Analysis**

   **a.   Diversity Jurisdiction**

28 U.S.C. § 1332 requires complete diversity of citizenship and an amount in controversy over $75,000.  Plaintiffs' allegation of diversity jurisdiction fails at the first step because Plaintiff Huang and Defendant Wilcher are both citizens of Maryland.  In order for complete diversity to be established, none of the defendants can be a citizen of the same state as any of the plaintiffs.  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978); *Strawbridge v. Curtiss*, 7 U.S. 3 (Cranch) 267 (1806).  Additionally, Plaintiffs provide no allegation that the amount in controversy is more than $75,000.  Accordingly, the court lacks diversity jurisdiction over Plaintiffs' complaint.

### b.   Standing

To assert standing under Article III, a plaintiff must show (1) actual or threatened injury that is both concrete and particularized, and not conjectural or hypothetical; (2) injury fairly traceable to the defendant's challenged action; and (3) injury likely redressable by a favorable court decision. *Burke v. City of Charleston*, 139 F.3d 401, 405 (4th Cir. 1998)(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Defendant argues that Shield does not have standing to bring any claims in this action.

An organization such as Shield may show standing to bring a suit under two theories: standing in its own right or representational standing, based on the fact that members it represents have been harmed. *Md. Highways Contractors Ass'n., Inc. v. State of Maryland*, 933 F.2d 1246, 1250 (4th Cir. 1991), *cert. denied*, 502 U.S. 939 (1991) (citations omitted).  It is unclear whether Plaintiffs assert that Shield has standing in its own right or representational standing.

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), is the seminal case regarding organizational standing, at least under the Fair Housing Act ("FHA").  In that case, the Court stated:

> If, as broadly alleged, petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low-and moderate-income home-

8

> seekers, there can be no question that the organization has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities — with the consequent drain on the organization's resources — constitutes far more than simply a setback to the organization's abstract social interests . . . .

*Id.* at 379.

Plaintiffs allege that Shield is an organization that "help[s] and support[s] victims others' unlawful actions." (Paper 9 ¶ 7). Plaintiffs further allege that Shield "through its staff, their times [sic], efforts, and costs, seeks to help victims seeking rights protected by Constitutions and Statutes." (*Id.* ¶ 23). Although unclear, Plaintiffs appear to allege that Shield suffered injury as a result of having to divert its resources from other programs in order to assist Ms. Huang. However, Plaintiffs fail to allege any specific facts to substantiate this bald allegation.

In *Equal Rights Ctr. v. Equity Residential*, 483 F.Supp.2d 482 (D.Md. 2007), the Equal Rights Center ("ERC"), a non-profit organization, sued the owner of apartment buildings alleging a nationwide practice of violating the FHA. The court held that ERC's allegations were sufficient to establish organization standing. The court explained:

> [P]laintiff has amply alleged facts showing a causal connection between plaintiffs injury and defendants' conduct. Taking the allegations of the complaint as true, defendants own and/or operate 300 properties which, in one or more ways, limit access to persons with disabilities and thus violate

9

> federal law. Specifically, through its investigation over a period of two years, plaintiff has found 'design and construct' violations in 61 of defendants' properties. Moreover, because, as plaintiff alleges, the tested properties share various combinations of common design elements with the untested properties, plaintiff may permissibly and reasonably allege on 'information and belief' the existence of violations at each of the properties named in the complaint. Plainly, plaintiffs allege facts that demonstrate that the defendants' actions 'have caused the organization to divert resources to identify and counteract the defendants' unlawful practices,' and thereby impede and frustrate its core mission, which is, through 'education, counseling, advocacy, enforcement, and referral services to aid protected individuals.'

*Id.* at 487.

Here, Plaintiffs' complaint is devoid of any facts similar to those in *Equity Residential*. Plaintiffs' unsupported, vague assertions are insufficient to establish organizational standing. Accordingly, Plaintiff Shield will be dismissed from this action for lack of standing.

### c. Federal Question Jurisdiction

It is not necessary to address Defendant's contention in full. Suffice it to say, Plaintiffs purport to bring claims under federal statutes, although none survive under Fed.R.Civ.P. 12(b)(6) as explained below.

### B. Failure to State a Claim

### 1. Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)(citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations,

11

*Ashcroft*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Ashcroft*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

### 2. Analysis

The gravamen of Plaintiff Huang's amended complaint is that Defendant gave false testimony as a witness in the Planchek case.[3] Plaintiffs assert that "Defendant Richard Wilcher . . . lied during his depositions in discovery and/or in the jury trial (April 17, 2008)" and that Defendant "intentionally lied and defrauded under oath a the jury trial . . . ."  (Paper 9 ¶¶ 15-16).  Federal and Maryland law provide witnesses with absolute immunity from suit based on their testimony during judicial proceedings.

---

[3] Though Plaintiff Huang brings claims regarding conspiracy, discrimination, and the FHA, the only facts that Plaintiff presents regarding Defendant's wrongdoing relate to his testimony during the state court proceedings.  Thus, those claims fail on the basis that they are not supported by any facts.

12

In federal court, dating back to the common law, witnesses are absolutely immune from civil liability for testimony given in a judicial proceeding. *Brice v. Nkaru*, 220 F.3d 233, 239 n.6 (4th Cir. 2000), *citing Briscoe v. LaHue*, 460 U.S. 325, 331, 335 (1983). "A witness is entitled to testimonial immunity 'no matter how egregious or perjurious that testimony was alleged to have been.'" *Moldowan v. City of Warren*, 578 F.3d 351, 390 (6th Cir. 2009), *quoting Spurlock v. Satterfield*, 167 F.3d 995, 1001 (3d Cir. 1999). The Fourth Circuit has noted that absolute witness immunity extends to testimony given in pretrial proceedings. *See Brice*, 220 F.3d at 239 n.6, *citing Williams v. Hepting*, 844 F.2d 138, 141-43 (3d Cir. 1988).

Absolute witness immunity for testimony also exists under Maryland law, as the Court of Appeals of Maryland recently explained in *Offen v. Brenner*, 402 Md. 191, 199 (2007):

> "[I]t is of the greatest importance to the administration of justice that witnesses should go upon the stand with their minds absolutely free from apprehension that they may subject themselves to an action of slander for what they may say while giving their testimony . . . . 'The witness speaks . . . under the control of the court; is compelled to speak, with no right to decide what is immaterial; and he should not be subject to the possibility of an action for his words.'"
>
> [*Hunckel v. Voneiff*, 69 Md. 179, 187-88 14 A. 500 (1888)](internal citation omitted). Based on this justification, we provided absolute

>           privilege for statements made by a witness in
>           the course of judicial proceedings.

Defendant is absolutely immune from suit for statements made during the previous proceedings, even if the statements were intentionally false.  "The privilege applies even when the witness publishing the defamatory statement does so maliciously, despite known falsity, or under otherwise unreasonable conduct."  *Offen*, 402 Md. at 200 (citing *Reichardt v. Flynn*, 374 Md. 361, 367 (2003); *Schaub v. O'Ferrall*, 116 Md. 131, 138 (1911)).  On this basis alone, Ms. Huang's entire complaint fails.

### IV. Conclusion

For the foregoing reasons, Plaintiffs' motions will be denied and Defendant's motion will be granted.  A separate Order will follow.

                                    _____/s/_____
                                    DEBORAH K. CHASANOW
                                    United States District Judge